Good afternoon, your honors. Stephen Lane and Doug Doris is co-counsel for plaintiff. Your honors, this case is one that seems very simple to me. The issue before you is whether or not Phyllis Cash, the widow of Billy Cash, her husband, and the father of their children, whether the children of Billy Cash sacrificed, renounced, waived, released, or assigned their rights of recovery under the Survival and Wrongful Death Act as a result of Billy Cash's death. The court below held and granted summary judgment that the children of Billy Cash were waived and assigned the rights that they had under the Wrongful Death and Billy Cash was involved in a medical course that we allege resulted in his death. After his death, there were disputes among the kids and and he had assets of cash, he had debt, he had farm equipment, he had farmland, he had grain. And Phyllis Cash was represented by an agreement was entered into when there was no administrator appointed, there were no discussions, there were no documents, there was nothing at all that suggested that the agreement was made between or concerning anybody else other than the heirs of Billy Cash, Phyllis and their children. The document that is referred to as the tells us all what the settlement was about. And in every possible respect, in every possible opportunity where the assets of Billy Cash were identified and referenced in this agreement, they talked about farm property, they talked about debt, they talked about grain, they talked about farm equipment, they talked about vehicles, they talked about real estate that Billy Cash held either in joint tenancy with Phyllis or as a tenant in common with her and others. At no time in any respect was there any reference to any interest under the Survival Act or the Wrongful Death Act. At no time in any document was there a reference to a medical negligence case. But in paragraph 20 of that Council, it specifically says, all interest in causes of action relating to the death of Billy G. Cash. That is specific in that agreement. Yes, Your Honor. However, everything before that phrase refers to the grain, refers to the land, refers to the banks, refers to the debt, refers to the vehicles, refers to the farm equipment. And I don't believe that you can fairly interpret that phrase without considering all the preamble terms that were used to describe what the documents referred to, what the assets were. These lawyers who crafted the agreement and the assignments had to have known that the law in Illinois for over 100 years was that you can't transfer, you can't assign rights of action under personal injury cases, wrongful death cases, survivor actions. There's no reason why a waiver or assignment or relinquishment or any other aspect of the wrongful death and survival actions were even a part of this or would even be considered. And in fact, as the attorneys, Terry Sharp and Robert Wilson testified by way of their affidavits, they didn't consider it. It never came up. They were not discussed. There was no consideration by the defendants in this case. They weren't part of the discussions. They weren't at the table. They had nothing to do with it. Everything that was at issue as far as the attorneys and the family concerned, claims that they each had or may have against each other as the heirs of Billy Cash, it said so. All of the assignments said that the assignments resolved issues pertaining to the... I don't want to mistake the language, but the exact terms said, This assignment is intended to include the personal property, cash, and any real estate or interest in real estate that I am entitled to receive as the heir slash legacy of Billy Cash. There's no reason why it should have come up and there's no reason, unless the lawyers wanted to defraud Phyllis Cash for some reason, why they would have included a wrongful death case or interest in a wrongful death case or an interest in a survival action in an agreement settling the claims that the kids and Phyllis Cash may have had against each other regarding farm property, regarding bank accounts, regarding debt and vehicles. It just didn't come up. I struggled to find the evidence or inference that the wrongful death and survival actions were intended to be included here. With all respect to the lower court, the judge's obligation was to construe the pleadings and the evidence and the exhibits and the affidavits strictly against the defendants and liberally in favor of the plaintiffs, the estate. I think what the court did is reverse that. And he interpreted the documents and the pleadings and the affidavits in a way that was liberal to the defendants by including a cause of action that was never described, including parties that were not parties, including causes of action that are void of the court. They're void if they were transferred. They cannot transfer a cause of action under either the Survival Act or the wrongful death act. They're void. And so they have no effect. And they have no legal effect. And so why would these actions be included in a settlement agreement, including payment by Phyllis Cash to the kids and assignment of things that can't be assigned? It's an illusory assignment. It didn't happen. And at the very least, their intent is certainly a material issue of fact, which the court's obligation was to decide whether or not there was a material issue of fact. The job is not to try that question of fact. It's to determine whether or not there is one. And again, he violated the obligation and tried. He determined that that language was clear and without doubt that because it said all actions, it included absolutely the wrongful death and survival actions. The fact is every attorney, every party to that, being the family, who was a part of this transaction and the settlement agreement and the assignments, testified they never considered that. They never talked about it. They never intended that those be included. They only intended the matters relating to the income and the cash and the farm issues that I raised earlier. How is it not an issue of fact to infer that something like this, a waiver or a release or a discharge of a non-party who's not named, who has nothing to do with the probate action that this is all about? How is it possible that that's clear and without doubt that that was intended to be included in this family settlement agreement? I know what was included in the agreement. It was disputes about the petition to appoint the administrator. It was about the real estate that was owned by Billy and Phyllis in joint custody and in tenancy in common. It was about other real estate. It was about farm equipment and vehicles. It was about grain. It was about what they said was other assets that could pass to the estate. Even if you accepted that the wrongful death action was thought about, was considered, was even an issue that was discussed, it's clear that a wrongful death action, the assets of that go directly to the beneficiary. It is not an asset of the estate. So the only thing that even could possibly go to the estate was under the survival action. Defendant's position is the plaintiff's children relinquish their interest in that, in both the survival and wrongful death action, but that too cannot be assigned and that too would be void if it was intended to be assigned. I believe that it's clear and without a doubt, and in fact, other than the judge's decision that this did include the wrongful death and survival action, there isn't one scintilla of any evidence, any pleading, any affidavit, any evidence. There's nothing that says that anybody from the Cash family, Phyllis or her children, or their lawyers ever considered including this in the agreement. And that is why we have to read that phrase of all other causes of action as relating to what they did tell us was involved. Every one of the claims that they refer to refers to claims that the children and widow of Billy Cash may have had against each other. At one point, in Parker language, I believe it was paragraph 14 of the agreement, they referred to the claims as being doubtful and dubious or dubious and doubtful. How on earth can we look at that and say that the family meant that that must include the wrongful death case and the survival action that might be pursued against the parties that they believed killed their husband and father? And it just defies logic. We know that every time it refers, the documents refer to resolving anything and the issues, that the language referred to all issues between the heirs with respect to the income, assets, business claims, receivables, causes of action, and any and all other assets of Billy or the estate of Billy Cash. Relating to grain, farm equipment, vehicles, and all of the rest, there isn't one word in any of the affidavits, in any of the settlement agreement provisions, in the assignments. There's nothing that refers to the defendants, and yet the defendants say that they have been freed of the causes of action that were owned by the family of Billy Cash, even though they were never mentioned in it. You can't look at the consideration in this case where Phyllis Cash is paying the children $50,000, and in return, the children are relinquishing their rights in the cash and the farm equipment and the grain and the resources. You can't take the real estate that was involved and separate the fact that there was, according to the document, a transfer of their interests of these things to Phyllis, and include something that can't be transferred and can't be assigned. It's together. There isn't just, as defense suggests and argues, that, well, they're free to release their own claims in this. No. It was in conjunction with the transfers of the other interests and the payment by Phyllis to them. One doesn't happen without the other, and the other, the transfers to Phyllis, are void if they include the wrongful death and survival actions. There's an explanation. It didn't happen. They didn't think about this. It was never their intent to include those. All they were dealing with were the family issues relating to the appointment of an administrator and the distribution of Billy Cash's income and farm assets. That's what this case was about. That's what the settlement agreement was about. That's what the assignments were about. They never, ever involved the medical malpractice case. The standard that the lower court had to satisfy was a high one. The defendants are only entitled to summary judgment if their right to summary judgment is clear and without a doubt. Without any doubt. In doing so, the court had to go through a process in which it construed all the pleadings, the affidavits, the evidence, liberally in favor of the plaintiff and strictly against defendants. For those reasons, Your Honor, unless you have any questions, we ask that the court reverse the trial judge and order as a matter of law that the summary judgment be denied. Because there is, I think it's clear, there is no real issue. There was no evidence that the wrongful death or survival actions were intended by anybody to be included in either the assignments or the settlement agreement. And so we ask that Your Honors remand and reverse and hold as a matter of law that the summary judgment should be denied. Thank you, Your Honor. Thank you. Your Honors, counsel, and may it please the court, my name is Jerry Montgomery and I am representing one of the defendants in this case, Dr. Bajie George. Joining me at the council table is Attorney Phil Hardy on behalf of St. Mary's Hospital and Attorney Matthew Zill on behalf of the late Dr. Shaw. As this court is undergoing the argument, Your Honor, I would be doing both of the arguments, but at the end I'll turn it over to Mr. Hardy for basically the bullpen to clean this up a little bit. How's that? Proceed. Your Honor, as this court is well aware and as the plaintiff stated during his arguments, we're here on the interlocutory appeal pertaining to the circuit court's grant of defendant's motion for summary judgment as to a major issue. The motion was originally filed by Dr. Bajie George, but joined by all of the defendants. Now, the major issue advanced by the defendants in their motion for summary judgment is whether Billy Cash's children had a right to share in the proceeds of the current action, namely a wrongful death and a survival action claim. Now, defendants filed their motion for summary judgment as to a major issue pursuant to 735 ILCS 52-1005D because Billy Cash's widow and his children had signed a family settlement agreement as part of the proceedings related to his death. And in paragraph 20 of that settlement agreement, Billy Cash's children agreed, as Justice Bowie stated, that they shall henceforth and forever claim no interest in any of the income or assets of Billy G. Cash and shall claim no interest in the income or assets of the estate of Billy G. Cash. The circuit court found that this paragraph unambiguously waived the rights of the children to share any of the proceeds from the wrongful death or survival action claims. Now, I want to be clear here, Your Honors. Defendants are not arguing that this suit is going to be dismissed or in its entirety in any way, only that Phyllis Cash, Billy Cash's widow, is the proper party, is entitled to proceeds from the judgment, not his children. Now, it is undisputed that Phyllis Cash and Billy Cash's children signed and executed the family settlement agreement. It was filed with the probate court, and the court can take judicial notice of the same, especially the fact that the family settlement agreement was made in order of the court on June 10, 2010. Now, plaintiff has advanced several arguments here, and the first that I will address, Your Honors, is that the family settlement agreement really didn't encompass the current action, and defendants respectfully disagree with that, Your Honors. And plaintiffs begin by claiming, well, the family settlement agreement only released an interest in the assets of Billy Cash's estate, and a wrongful death is not an asset of the estate. And you heard plaintiff's attorney state the same for his argument. It must be noted, however, that at no point in oral argument or any written plea has the plaintiff advanced any argument that his survival action claims are not an asset of the estate. They undoubtedly are. They belong to Billy Cash before his death. The survival action claims accrue before his death and belong to him while he was living. Now, the only support for that the wrongful death action is not an asset of the decedent's estate is the plaintiff's point to the decision of the Illinois Supreme Court in Carter v. SSCO. And in Carter, the Supreme Court acknowledged that a wrongful death action is not a true asset for all purposes, something defendants have acknowledged from the very beginning. It's not a true asset for all purposes. Whether or not it's an asset is determined by the purpose of which you're asserting it. Now, Your Honors, in Carter, what was trying to be decided was the decedent had signed an arbitration agreement in a nursing home before he had passed away. After his death, they filed wrongful death and survival action claims, and the court said they tried to compel them to go to arbitration. The court said that the wrongful death action was not an asset of the decedent's estate for which you could determine the – or control the form or manner of adjudication. It's not an asset for that purpose. At the same time, the court acknowledged that it has to give effect to the plain language of the Illinois wrongful death statute. And it said – and the wrongful death statute said in a relevant part that in the event that the only asset of the deceased's estate is a cause of action arising under the wrongful death act. So the court was faced with, well, it is an asset for certain purposes. And, Your Honor, Carter never decided whether a wrongful death action is an asset for the purposes of releasing or renouncing one's rights in a wrongful death. It was concerned with whether or not you could force an individual into arbitration, especially an agreement that the decedent's children had not been a party to, whether you could force them into arbitration and control the form and manner of adjudication. It never was addressed, the issue before the court today. And if there was no other cases here, Your Honor, we would be standing here today arguing that this is a case of first impression, whether or not we decide that for the purpose of which defendants are asserting, it is an asset under the wrongful death act. But, Your Honors, we do have a case that, although not directly similar, is instructive and analogous to what we're talking about. It's the case we cited in the defendant's brief, Bender v. Ira, Your Honor. And in Bender, what happened was some parents had been deemed negligent for their children, and the children had been taken away. While in foster care, the children subsequently passed away, and the independent administrator comes forward and tries to renounce or take away the parents' rights in her estate. But before any adjudication could be had on that matter, the parents voluntarily signed a disclaimer, a release of waiver, and said we shall take no part in the assets of our child's estate. Well, after the administrator subsequently comes forward, they filed a wrongful death action. And in Bender, the plaintiffs made the same arguments that plaintiffs are making here that it was not an asset. And the first district disagreed, and they said it is an asset for that purposes. The decedent's children can release or waive any interest they may have in a wrongful death suit. And, Your Honor, it should be noted here that at no point during Carter, which was cited for letters, did they overrule Bender. They didn't address the issue. And since then, not one court has called into question the applicability of Bender or that it's a bad law, as plaintiffs assert. It is, as established in Bender, the wrongful death action can be waived or released by the children. It is an asset of the estate for that purpose. That is entirely consistent with Carter, which said whether or not it's an asset is a question of purpose, Your Honors. Now, Your Honors, that leads us to the language of the family settlement agreement itself, because as the wrongful death and survival actions are assets of the decedent's estate, they are subject to the family settlement agreement. And as Judge Bowie noted earlier, Paragraph 20 specifically states that they are releasing and shall henceforth and forever claim no interest in any of the income or assets of Billy G. Cash and shall claim no interest in the income or assets of the estate of Billy G. Cash. And by them, they are referring to Randall Cash, Jeffrey Cash, Mark Cash, and Tanya Hart, who are the children of Billy Cash. Thus, by the plain meaning of Paragraph 20, which the lower court relied on, the children of Billy Cash released, waived any interest they may have in the income or assets of Billy Cash or his estates, including the current suit. The language should be given its plain meaning and applied as written. What essentially happened in this family settlement agreement, Billy Cash's children traded a mere expectancy interest in their father's estate for the promise of $50,000 apiece. They took $50,000 from their mother 10 years ago in exchange for expectancy interest that may or may not come. They were also discharged from having to pay any of the debts related to their father's estate, which their own probate proceedings to state were substantial. Now, evidence of the children's release or waiver of all claims and cause of action is found within the relevant portion of the family settlement agreement. As I stated, they received $50,000 in relief from paying any debts or obligations owed by their father. Phyllis Cash wished to ensure that the assets and interests of Billy Cash's estates were hers and hers alone in order for the family settlement estate to resolve all issues between the heirs with respect to the assets of Billy Cash and or the estate of Billy Cash and end the turmoil that existed within the family as Plaintiff's counsel admitted was occurring. Now, Plaintiff contended that in response, there's no indication in the family settlement agreement that is intended to encompass the possible future wrongful death action. But in the very next sentence, but in the family settlement agreement, it states the family is having disagreements and wish to settle any disputes over inventory, grain, accounts receivable, notes receivable, cause of action, contracts, and any other assets too numerous to mention. Now, Your Honors, this is a very broad release here. And in our brief, we cited the case of Rakowski. And in Rakowski, the court specifically stated it's impractical to ask in a release to state every single cause of action in a broad release. When you state cause of action, that encompasses all causes of action and your claim is not defeated simply because you did not list a specific cause of action. It would be absurd, I think, to ask for a release for any body executing release to list every single possible cause of action they may have. I mean, what paragraph number was that? Your Honor. What paragraph number was that? Excuse me. The release. The language you just cited. The – with the assets of the estate? Are you referring to the resolvable issue between the heirs? Correct. Okay. It's a – Your Honor, it's found on the record in C-341, Volume 2. Thank you. I don't have the specific paragraph, but that's where it's found on the record. Now, the claim also contains the language of the Family Settlement Agreement. Evidence is only an intent to resolve issues among the heirs, not among the defendants. And they point to paragraphs 12 and 13 of the brief that's only intended to resolve issues between the heirs. If we take a close look at paragraph 12, it specifically mentions that the heirs are wishing to resolve any issues as to cause of action regarding Billy Cash. Defendants do not dispute that one of the purposes of the agreement was to resolve any issues between the heirs as to grain, farm equipment, et cetera, and land. However, defendants contend that another purpose of the Family Settlement Agreement was that Phyllis Cash wanted all the interest in her late husband's estate herself, and the children executed releases or waivers as to that effect. The law in the state of Illinois that follows to contract interpretation is that every single clause within the contract should be given meaning because it's assumed it was placed there for a purpose, Your Honor. Essentially, what plaintiffs are asking this Court to do is to look at certain ones and ignore other aspects of the family release, specifically paragraph 20, which is cited by Justice Boole. Now, plaintiffs also made the argument that essentially what they're trying to argue is that Phyllis Cash could not assign her rights in a wrongful death action. Plaintiffs have never contended that Phyllis Cash was free to assign a wrongful death action. It would be contrary to Illinois public policy. It was argued in the lower court, and the brief, it was conceded the same. Phyllis Cash could not acquire the assets, but the children of Billy Cash sure could release and waive the interest they have in the estate. There's been no argument set forth that they did not have that power, Your Honor. Now, Your Honors, I want to briefly, and I'd be remiss here at the end if I didn't mention something raised in the plaintiff's brief, and that was the issue of third-party beneficiary status. And the third-party beneficiary status was raised basically to state to this Court that the plaintiffs didn't have standing or the defendants didn't have standing to file a motion for summary judgment. It really wasn't addressed on the argument, but I would like to bring this to the Court. Plaintiff's argument suffers from a fundamental flaw or problem, and I'm simply referring to that on page 17 of the plaintiff's appellate brief, footnote 3, plaintiff concedes, although not raised below, the issue of whether defendants were entitled to third-party beneficiary status was not properly brought as a motion for summary judgment. Plaintiff has conceded the issue of third-party beneficiary status was not raised at the lower court level. What they argued was the merits of defendants' motion for summary judgment. Now, plaintiff does so and states the case of Carlson v. Rehab Institute of Chicago and saying, well, we didn't raise the affirmative defense at the lower court because the defendants shouldn't file a breach of contract claim in Jefferson County. Then they could have asserted their affirmative defense of lack of standing because the defendants were not third-party beneficiaries. Your Honor, in Carlson, from the very beginning, the individual brought a breach of contract claim establishing and stating he was a third-party beneficiary. Here, defendants had never argued that they were third-party beneficiaries to the contract, only that they had an affirmative defense to the claims brought by Billy Cash's children based on waiver of release. Thus, the whole Carlson decision is completely inapplicable. As this Court knows, issues not raised at the lower court level are waived at the appellate court level. And it's certainly that the plaintiffs could have raised the issue of standing or third-party beneficiary status at the lower court. When defendants filed their motion for summary judgment as to the issue of the family settlement agreement, plaintiffs at that point could have very easily filed a cross-motion for summary judgment asserting a lack of standing at that time. It is well established under the law of Illinois that an affirmative defense can be set forth in a motion for summary judgment. It's not waived, Your Honors. Therefore, any indication that it was not proper that defendants brought the current action or that they didn't have standing to bring it is without merit, Your Honors. And at this time, Your Honors, I'll cede to my co-counsel, Mr. Hardy, for two remarks. May it please the Court, William Hardy on behalf of St. Mary's Hospital. I have very little to add. I think he's covered pretty much everything that I was going to cover. Let me just respond to a couple of points that Mr. Doris made. He says that the judge construed these affidavits in a light and most favorable of the defendants. The judge never got to the affidavits, and probably so, because there's no ambiguity in the settlement agreement. And without an ambiguity, you don't even get to the affidavits. That's ultimately what happened. The other point I would make on that, and it wasn't addressed during oral argument, but I think it's in the brief, is that most of this stuff, almost all of it, is coming up for the first time on appeal or was raised in a motion to reconsider. The affidavits, everything else, all of those things were available during the original hearing. They were brought too late, so that's a forfeiture. This third-party beneficiary thing that was just discussed, that's something that's brand new, was not argued in the trial court, so it's forfeited. But I would make one last point on that, and I think Mr. Montgomery referred to the Bender case. But, you know, the Bender case involved the same situation. There was no the doctors, the physicians, the hospital, all of the parties that got out because of the release that was signed by the parents in the probate court. We're not parties to that agreement. This is a straightforward waiver release issue, and for that reason, we believe the trial court was correct, and we ask that the court affirm the trial court's summary judgment on this major issue. Thank you, Your Honor. Thank you, Your Honors. First of all, the judge did get the attorneys and Phyllis Cash's affidavits. The court felt that because paragraph 20 was clear, it had no need to reach apparel evidence. But, in fact, that flies right in the face of construing all the pleadings, evidence, affidavits, and exhibits liberally in favor of the plaintiff and against the defendants here. So I thought the affidavits came with the motion to reconsider. That's correct, Judge. Okay, I just want to be clear. Yeah, and defendants filed no objection. They didn't move to strike them. They were properly before the court. And, moreover, they filed their own affidavit as well. They don't mention that. We didn't argue about the third-party beneficiary issues because in defendants' brief, they conceded that, that they never contended they were third-party beneficiaries. The court should not narrow that one phrase in paragraph 20 to read simply apply to all cause of action and ignore all of the other provisions that specified and laid out what the issues were that were being addressed in the settlement agreement. That's just exactly what they've asked the court to do. And that's what the court did. They called your attention to the Rutkowski case, and that was an issue about a release between two parties to the same case. Here we're talking about what are being construed as a release of people, parties, a hospital, and doctors who had nothing to do with this proceeding. They weren't named in it. They weren't presented in it. They weren't witnesses to it. They didn't negotiate in it. They paid no consideration. They provided no consideration whatsoever for being discharged. That's not the case in Rutkowski. We have two parties on opposite sides, and they're saying the release can't possibly name everything. But here, where we have what's being construed as a release or an intended release, here they're saying that you can't specify everything, and so everything must be construed to be a part of this agreement. And that's just not proper. In terms of the Bender case, this is a situation where the biological parents of an abused child who had neglected the child and who had been determined by the court and accepted to have pre-deceased the child were trying to bring a case themselves for the child's death. And what the court held was that because they were determined to be pre-deceasing the child, they didn't exist. They didn't exist now. They didn't exist at the time of the death. They didn't exist at the time they were trying to bring this case. And for that reason, they were not beneficiaries. We never said, I don't believe we've ever said, that a survival action is not a part of the estate. What we said is that a survival action cannot be transferred, it cannot be assigned, any more than a wrongful death case, any more than someone living could assign their own cause of action to someone else if it involves injuries to the person. And one last thing that was interesting, they said, they're not trying to say that Phyllis isn't a proper party. They're saying, she does have her case, her wrongful death case. But what they're trying to do, and it's very transparent, they're trying to diminish the amount that Phyllis or the children should get, arguing that the kids waived their causes of action, giving it to Phyllis with the other assets, and that she should recover their shares of it. That's really what this is about. They cannot possibly say that she is not entitled to recover under the Wrongful Death Act. They cannot possibly say she's not entitled to recover the Survival Act. And in fact, interesting with the survivable, if somehow the court determined that even though it was never discussed, even though there was no consideration, even though it was never a part of this case pursuant to everybody who was involved in the transaction, there would only be one amount that a jury awards for the survival action. And whether it's divided amongst the children and Phyllis or just to Phyllis, it's the same number. It doesn't change anything. We're talking about the wrongful death case, which is the kids. Thank you. Thank you. The Court will be in recess until 10 a.m.